RECORD NO. 15-1050

IN THE
## UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

CYNTHIA LEE

*Plaintiff-Appellant*,

v.

FAIRFAX COUNTY SCHOOL BOARD, *et al.*

*Defendants-Appellees*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

OPENING BRIEF OF THE APPELLANT

Christopher E. Brown, Esq.
VSB #39852
The Brown Firm PLLC
526 King Street, Suite 207
Alexandria, Virginia 22314
(703) 924-0223
Fax (703) 997-2362
brownfirm@lawyer.com

*Attorney for the Plaintiff-Appellant*

May 11, 2015

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

*No. 15-1050 Caption: Cynthia Lee v. Fairfax County School Board, et al.*

DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER ENTITIES WITH A
DIRECT FINANCIAL INTEREST IN LITIGATION. DISCLOSURES MUST BE FILED ON
BEHALF OF INDIVIDUAL PARTIES AS WELL AS CORPORATE PARTIES.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Cynthia Lee who is Appellant, makes the following disclosure:

1. Is party/amicus a publicly held corporation or other publicly held entity? ( ) YES (X) NO

2. Does party/amicus have any parent corporations? ( ) YES (X) NO
If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3. Is 10 percent or more of the stock of a party/amicus owned by a publicly held corporation or
other publicly held entity? ( ) YES (X) NO

If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct
financial interest in the outcome of the litigation (Local Rule 26.1(b)) ( ) YES (X) NO

If yes, identify entity and nature of interest:

5. Is the party a trade association? ( ) YES (X) NO

 If yes, identify all members of the association, their parent corporations, and any publicly held
companies that own 10 percent or more of a member's stock:

6. If case arises out of a bankruptcy proceeding, identify any trustee and the members of any
creditor's committee:

DATED: May 11, 2015.

                                       ____/s/ Christopher E. Brown_____
                                       CHRISTOPHER E. BROWN
                                       *Attorney for Plaintiff-Appellant*

# TABLE OF CONTENTS

**Page(s)**

FRAP 26.1 and LOCAL RULE 26.1.......................................................1

TABLE OF CONTENTS.…………………………………………….…2

TABLE OF AUTHORITIES……………………………….……………....3-6

JURISDICTIONAL STATEMENT………….……………………….7

STATEMENT OF ISSUES………….………….…………………………8

I.      Whether the District Court erred when granting the School Board et al's Rule 56 Motion For Summary Judgment as to Counts I, and II, without considering the voidness of the Settlement Agreement.

II.     Whether the District Court erred when denying Ms. Lee's Motion To Alter Or Amend Judgment without considering the Settlement Agreement's voidness or the manifest injustice that would occur by the dismissal of the case.

PARTIES………………………………………………………………....8

STATEMENT OF CASE………………………………………………...8

STATEMENT OF FACTS………………………………………….……9

SUMMARY OF ARGUMENT………………………………………...23

ARGUMENT…………………………………………………….24-35

STANDARD OF REVIEW…………………………...……………….24

CONCLUSION…………………………………...……………….....35

CERTIFICATE OF COMPLIANCE …………………………...…...38

CERTIFICATE OF SERVICE…………………………………………39

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### <u>Cases</u>

*Anderson et al. v. Liberty Lobby, Inc. and Willis A. Carto*
    477 U.S. 242 106 S.Ct. 2505 91 L.Ed.2d 202 (1986)....……………...28

*Bob McClemore and Co., Inc. v. Branch Banking & Trust*
    *(In re Maco Homes, Inc.),*Nos. 95-2938, 95-2939, 1996
    WL 511494, at *4 (1996)………......................................................29

*Boddie v. Connecticut,*
    401 U. S. 371, 401 U. S. 379 (1971)................................................29

*Bond v. Crawford*,
    69 S.E.2d 470 (Va.1952)…………………………………………...25

*Canal Ins. Co. v. Distrib. Servs., Inc.,*
    320 F.3d 488, 491 (4th Cir. 2003)…………………………………24

*Carwile v. Richmond Newspapers, Inc*.,
    82 S.E. 2d at 592 (1954)…………………………………………...25

*Cary v. Harris,*
    91 S.E. 166 (1917)…………......…………………………………..25

*Colbert v. Ashland Construction Co.,*
    11 S.E.2d 612, 616 (1940)…,.……………………………………...35

*Duggin v. Adams,*
    234 Va. at 227-28, 360 S.E.2d at 836-37 (1996)…......................25, 28

*Finkel Products v. Bell,*
    205 Va. 927, 931, 140 S.E.2d 695, 698 (1965)...............................35

*Galloway v. Galloway*,
    47 Va. App. 83 (2005)……………………………………………...32

*Gertz v. Robert Welch, Inc.,*
  418 U.S. 323 at 349-50 (1974)……………………………...........28

*Harper v. Virginia Bd. of Elections,*
  383 U.S. 663, 669 (1966)……………………………………......30

*Harte-Hanks Communications, Inc. v. Connaughton*,
  491 U.S. 657, 667 (1989)…………………………………………...16

*Hiett v. Lake Barcroft Community Association,*
  418 SE 2d 894, 896 (1992)…….…………………………….....24

*Hooters of America, Inc. v. Phillips,*
  39 F. Supp.2d 582 (1998),
  173 F. 3d 933, 940(4th Cir. 1999)………………………………….23

*Hugger v. Rutherford Institute*,
  94 Fed. Appx. 167-168 (4th Cir. 2004)……………………….......28

*Mortarino v. Consultant Eng'g Servs.,*
  251 Va. 289, 467 S.E.2d 778, 782 (1996)…………………………..25

*Richardson v. Board of Regents,*
  70 Nev. 144, 261 P.2d 515 (1953).....................................................36

*Rubin v. Blue Cross Hosp. Serv., Inc.,*
  637 S.W.2d 695, 697 (Mo. 1982……………………………………...22-23

*Shankle v. B-G Maint. Mgmt.,*
  163 F.3d 1230, 1234-35 (10th Cir. 1999)…………………………...30-31

*Virginia Vermiculite, Ltd. v. W.R. Grace & Co.,*
  156 F.3d 535, 542 (1998)……………………………………….....23

*Walt Robbins, Inc. v. Damon Corp.,*
  232 Va. 43, 47, 348 S.E.2d 223, 226 (Va., 1986).............................35

*Wanda King v. DonnKenny,*
  84 F. Supp. 2d 736, 738-739 (2000)………………….…………........25, 31-32

*Wisconsin v. Constantineau,*
    400 U.S. 433, 437 (1971)....................................................................36

## Constitution and Statutes

28 U.S.C. § 1292(a)(1)……………………………………………….....7

28 U.S.C. §§1331……………………………………………….........7

28 U.S.C. §§1343……………………………………………….........7

28 U.S.C. §1391(b)(1)……………………………………………….....7

28 U.S.C. §1391(b)(2)……………………………………………….........7

42 U.S.C. Sections 1981……………………………………….........7, 8

42 U.S.C. Sections 1983……………………………………………….....7

VA CONST., Article I, §1.........................................................35

VA CONST. Article I, §11.......................................................35

## Codes and Rules

50 Am.Jur.2d, Defamation and Slander §§ 227, 229, and 231……………....26

Federal Rule of Civil Procedure (FRCP) 9 Pleading Special Matters….…..25

FRCP Rule 56 Motion For Summary Judgment……………....8, 9, 24, 28, 36

Restatement (Second) of Contracts §§ 174-77 intro. note at 473 (1981).....29

Restatement (Second) of Contracts § 205 cmt. d. (1981)…………………..23

Title 22.2 of the Virginia Code……………………………………………..8

## Miscellaneous

"Academic Freedom and Tenure: 1940 Statements of Principles

and Interpretive Comments", 60 AAUP BULL. 269 (1974)......................36

Allen, Tom, *"Going To Bat For You"*
The Virginia Journal of Education (October 2012)………..............……....20

Andersen, Eric G. & Burton, Steven J.,
*Contractual good faith: formation, performance,*
*breach, enforcement* pgs. 46-47 (1995)………............................…………23

Brown, Emma, *"Fairfax Drops Efforts To Fire Veteran Teacher"*
Washington Post article dated (July 15, 2012)…………………………....19-20

Fairfax County Public School's Regulation 4461.1……………......16-21, 29-30, 34

Fairfax County Public School's, *"Working Conditions Survey"*
Halley Elementary results (2012)………………………….………………....15

## SUBJECT-MATTER JURISDICTION

### District Court's Subject-Matter Jurisdiction

The U.S. District Court for the Eastern District of Virginia Alexandria Division ("District Court") had subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1343. This case arises in part under the United States Constitution and 42 U.S.C. Sections 1981 and 1983, as amended. Venue is proper in this district under 28 U.S.C. §1391(b)(1) and (b)(2). Plaintiff-Appellant Cynthia Lee ("Ms. Lee") resides in this district; Fairfax County School Board ("School Board") and all individual Defendants-Appellees ("School Board et al") conduct affairs in this jurisdiction; the action complained of occurred in this jurisdiction; evidence/employment records are maintained there in.

### Fourth Circuit Subject-Matter Jurisdiction

The District Court granted the School Board et al's Motion For Summary Judgment and denied Ms. Lee's Motion to Amend her Complaint on October 31, 2014. On October 31st the District Court also denied the School Board et al's Motion To Dismiss. Additionally the District Court denied Ms. Lee's Motion To Alter Or Amend Judgment on December 9, 2014. Ms. Lee timely filed her Appeal on December 30, 2014, appealing the District Court's Order. This appeal was docketed January 5, 2015. The 4th Circuit Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1292(a)(1).

7

## STATEMENT OF ISSUES

I.      Whether the District Court erred when granting the School Board et al's Rule 56 Motion For Summary Judgment as to Counts I, and II, without considering the voidness of the Settlement Agreement.

II.     Whether the District Court erred when denying Ms. Lee's Motion To Alter Or Amend Judgment without considering the Settlement Agreement's voidness or the manifest injustice that would occur by the dismissal of the case.

## PARTIES

1. Plaintiff-Appellant Ms. Lee is an African American with a Master of Science degree in Education. She was a Special Education Teacher for Fairfax County Public Schools from 1999-2012.

2. Defendant-Appellee School Board is a corporate body and a political subdivision of the Commonwealth of Virginia under Title 22.2 of the Virginia Code and is a "person" subject to suit within the meaning of 42 U.S.C. Sections 1981.

3. Defendant-Appellee Dr. Jack Dale ("Mr. Dale") was employed as Superintendent for Fairfax County Public Schools during the time in question. He is sued for damages in his individual capacity.

4. Defendant-Appellee Dr. Phyllis Pajardo ("Ms. Pajardo") is the Assistant Superintendent of Human Resources for Fairfax County Public Schools. She is sued for damages in her individual capacity.

5. Defendant-Appellee Mrs. Jamey Chianetta ("Ms. Chianetta") is the principal at William Halley Elementary School for Fairfax County Public Schools. She is sued for damages in her individual capacity.

## STATEMENT OF THE CASE

This is an appeal by Ms. Lee of the Orders of the Honorable Judge Anthony J.

Trenga of the U.S. District Court for the Eastern District of Virginia, entered on

October 31, 2014 and December 9, 2014.  The School Board et al filed a Rule 56 Motion For Summary Judgment against two (2) of Ms. Lee's counts for failure to state a claim and Memorandum in Support.  Ms. Lee filed an Opposition to the School Board et al's Motion For Summary Judgment and Motion To Dismiss.

Oral argument concerning the School Board et al's Motions was heard by the Court on October 31, 2014. The Honorable Judge granted the School Board et al's Motion For Summary Judgment stating that Ms. Lee signed a Settlement Agreement which waived her right to pursue litigation and denied the School Board et al's Motion to Dismiss stating that it was moot after Summary Judgment was granted. Ms. Lee timely filed a Motion To Alter Or Amend.  On December 9, 2014, The Honorable Judge denied Ms. Lee's Motion To Alter Or Amend Judgment restating that when Ms. Lee signed the Agreement she waived all rights to litigate the Counts stated in her Complaint.

## **STATEMENT OF FACTS**

On or about February 4, 1999, Ms. Lee became a Special Education Teacher at Mt. Vernon Woods Elementary School ("Mt. Vernon Woods"),

In 2005, Mr. Vernon Woods principal, Principal Romaine, conducted Ms. Lee's Performance Evaluation, which evaluated her performance as a Continuing Contract Special Education Teacher.  **JA 108**.

Principal Romaine assessed Ms. Lee's performance as *exceeding* expectations in thirteen (13) of the twenty-two (22) evaluated areas, including:

(i) Plans instruction to meet individual, group, and program needs.

(ii) Identifies and communicates specific student performance expectations.

(iii) Creates learning experiences that make the subject matter meaningful for all students

(iv) Understands how students differ in their approaches to learning.

(v) Is able to differentiate instruction to meet students' diverse needs.

(vi) Uses a variety of materials, resources, and technology that promote the development of critical thinking, problem-solving, and performance skills.

(vii) Manages student behavior.

(viii) Maintains the momentum of instruction.

(ix) Creates and maintains a positive classroom climate.

(x) Forges partnerships with parents that foster learning and well being at home and at school.

(xi) Builds positive relationships within the school and community.

(xii) Takes responsibility for and participates in a meaningful and continuous process of professional development that results in student progress.

(xiii) Fulfills educational leadership roles.

**JA 108**.

In the Diagnostic Focus portion of Ms. Lee's 2005 evaluation, Principal Romaine provided that "Ms. Lee is encouraged to continue to share her special education experience, knowledge and teaching strategies with her team and colleagues." Thus, not only did Principal Romaine indicate Ms. Lee exceeded expectations in 13 of the 22 evaluated areas, he provided no area in which Ms. Lee needed to improve, but rather, he encouraged her to "continue" to enhance the teaching experience for others. **JA 108**.

August 2006, Ms. Lee transferred from Mt. Vernon Elementary to William Halley Elementary School ("Halley Elementary"). At that time the principal there was Janet Funk ("Principal Funk"), and Ms. Chianetta was assistant principal.

Ms. Lee's next evaluation was due May 2008. Principal Funk conducted Ms. Lee's Performance Evaluation. **JA 112**. Therein, Principal Funk commented that "Ms. Lee worked in a collegial manner with the general education teachers in the grade levels to which she was assigned." Ms. Lee met all expectations and exceeded expectation in the following two areas:

(i)    Understands how students differ in their approaches to learning.
(ii)   Manages student behavior.

**JA 112**.

As a Special Education Teacher, Ms. Lee's emphasis was on her students thus she worked hard to promote her student's learning, as evidenced by e-mail dated March 9, 2010, from Ms. Jolley, the mother of one of Ms. Lee's students. In the email, Ms. Jolley thanked Ms. Lee for her "hard work." Ms. Jolley indicated her son had progressed in Math with the beneficial methods implemented by Ms. Lee. **JA 115**. Ms. Chianetta was aware that Ms. Lee was an exceptional teacher and did indeed acknowledge that in an e-mail dated March 9, 2010, when as assistant principal she e-mailed Ms. Lee, recognizing "how good it feels to get such positive feedback" regarding Ms. Jolley's compliments and gratitude. **JA 115**.

2009-2010 school year Ms. Lee was assigned to the second grade team which consisted of four (4) Caucasian teachers, including Ms. Hall, Ms. Fagan, Ms. Trejo, and Ms. Riggle, and (1) African American teacher-Ms. Lee.  May 2010, Ms. Chianetta was informed that she had been selected to become the Principal of Halley Elementary, upon Principal Funk's retirement July 2010. **JA 8** (p. 11. ¶ 59).

Days later, Ms. Chianetta went unannounced to Ms. Lee's classroom and told her that she received complaints from the team regarding her work ethics. Ms. Chianetta was Ms. Lee's assistant principal for four years prior to being told that she was selected as the next principal. Within the four years, as Ms. Lee's assistant principal, Ms. Chianetta never approached her in that manner.  **JA 8** (p.11.¶ 60).

Ms. Lee revealed her concerns about the individuals on the second grade team; however, Ms. Chianetta responded by making excuses for the team and further insulting Ms. Lee.  Before exiting, Ms. Chianetta indicated that without "improvement" Ms. Lee would be at risk of losing her job. **JA 8** (p. 12. ¶ 62).

Ms. Lee's special needs students excelled under her instruction, school year 2010 – 2011; nonetheless, Ms. Chianetta marked conditional reappointment on Ms. Lee's end of the year evaluation May 2011. **JA 117**.  On January 20, 2012, Ms. Lee met with Ms. Chianetta, now a second year principal and Ms. Tuttle, now a second year assistant principal. Ms. Chianetta showed Ms. Lee her mid-year evaluation, on which she marked do not recommend for reappointment. Ms. Chianetta also

informed Ms. Lee that her employment would be terminated at the end of the school year. **JA 8** (p. 12. ¶ 62).

Ms. Lee decided to appeal the mid-year evaluation. On or about January 31, 2012, Ms. Lee met with Ms. Chianetta and Ms. Tuttle to discuss the appeal. Ms. Lee alleged that their negative treatment and evaluation were racially motivated.

On or about February 20, 2012, Ms. Lee filed a discrimination claim against Ms. Chianetta with the Fairfax County Public School's Office of Equity and Compliance (OEC). As supporting documentation, Ms. Lee submitted a letter dated February 23, 2012, as written by Isabel DiStefano ("Ms. DiStefano"). Ms. DiStefano was a Halley Elementary teacher who co-taught with Ms. Lee for three out of the six years that Ms. Lee taught at Halley Elementary. **JA 146**.

In the letter, Ms. DiStefano stated that Ms. Lee presented educationally based grade-level standards through multiple facets, and that Ms. Lee did, indeed, collaborate with parents and teachers to enhance the learning of her special education students, as well as the general student body. The letter also provided that Ms. DiStefano and Ms. Lee's students performed well on the Virginia Standard Of Learning tests, which indicated the teachers successfully completed their teaching tasks. **JA 146**.

Despite the hostile work environment she endured, Ms. Lee continued to strive for success in her job. Ms. Lee's continuous efforts are clear from an email dated

May 10, 2012, sent from the lead Special Education Teacher, Elizabeth Whitcomb ("Ms. Whitcomb"). Therein, Ms. Whitcomb noted that the previous compliments she gave to Ms. Lee were genuine, and she told Ms. Lee to "Keep up the good work!!!" **JA 155**.

Catherine Beasley ("Ms. Beasley") further recognized Ms. Lee's efforts by letter dated May 23, 2012. Ms. Beasley was a substitute teacher who had the opportunity not only to substitute for Ms. Lee's class, and thus, to see Ms. Lee's lesson plans, but she also had the opportunity to share a partitioned classroom with Ms. Lee during a separate long-term substitute position. Ms. Beasley's letter was a statement of her "confidence in [Ms. Lee's] skills and abilities as an educator." Therein, she praised Ms. Lee's voluntary mentoring, teaching tactics and skills, classroom accomplishments, and she especially gave recognition to Ms. Lee's very thorough lesson plans. **JA 156**.

Additional support of the fact that Ms. Lee was an exemplary teacher is the June 14, 2012, letter written by Mr. and Mrs. Cherry, wherein they described Ms. Lee as "one of the brightest, most technical and talented teachers that they had encountered in twenty-five years of dealing with the public school system." **JA 165**.

Although Ms. Lee had proven herself as an outstanding teacher, May 14, 2012, Ms. Chianetta marked do not reappoint on Ms. Lee's teacher evaluation. **JA 158**. That same day, by letter dated May 14, 2012, with reckless disregard for the truth,

Ms. Chianetta wrote a letter to Ms. Pajardo, and therein deemed Ms. Lee incompetent. She also recommended that Ms. Lee be terminated from the position of Special Education Teacher after thirteen years of successfully teaching in the Fairfax County Public School System. **JA 162**.

Ms. Lee argues that Mr. Dale and Ms. Pajardo knew of Ms. Chianetta's flaws as a newly appointed principal because during school year 2011- 2012, Mr. Dale requested all teachers to complete a "Working Conditions Survey" and 100% of Halley's teaching staff complied. The results revealed that a large percentage of the teaching staff had significant concerns about Ms. Chianetta and her administrative staff as follows:

> -- 49% of the teachers stated that they did not feel comfortable raising issues and concerns to Ms. Chianetta and her administration staff that were important to them;

> -- 41% of the teachers stated that Mrs. Chianetta and her administration staff did not consistently support them;

> -- 33% of the teachers stated that there was not an atmosphere of mutual trust and respect in the school

**JA 8** (p. 27. ¶ 154).

Nonetheless, after receiving Ms. Chianetta's letter which recommended Ms. Lee's termination, with reckless disregard for the truth, Ms. Pajardo wrote to Mr. Dale by letter dated May 23, 2012, wherein which she deemed Ms. Lee incompetent and recommended that Ms. Lee be terminated. **JA 163**.

Thereafter, with reckless disregard for the truth, Mr. Dale sent Ms. Lee a letter dated May 30, 2012, wherein he deemed her incompetent and recommended her termination to the School Board. **JA 164**.

> A finding of actual malice "requires at a minimum that the statements were made with a reckless disregard for the truth." (Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 667 (1989)).

**"Personal face-to-face meetings shall be required at all steps" JA 621** (p. 3. V. ¶2).

**Step 1 – Informal Meeting**
The employee shall discuss concerns with immediate supervisor..... a concern must be raised within 15 business days following the event.....**JA 621** (p. 4 A. ¶1).

**Step 2 – Review of Written Grievance with Immediate Supervisor**
When an employee is dissatisfied with the decision under the informal procedure, the employee may submit the grievance utilizing Form A, to his or her immediate supervisor/principal for review. The employee must initiate the step 1 meeting and file the grievance in writing within 15 business days following the event giving rise to the concern..... **JA 621** (p. 4. B. ¶1).

**Step 2 no. 2 - Allegations of Discrimination in Connection with Grievance**
Mandates that "any complaint involving a charge of discrimination...... the time lines shall be held in abeyance pending investigation and determination by the OEC." **JA 621** (p. 5. Step 2 - 2 ¶1).

**Step 3 – Cluster/Department Assistant Superintendent**
If the grievance is not settled to the employee's satisfaction in Step 2, the employee can proceed with the grievance to Step 3 by filing a written notice utilizing step 3-Apeal of immediate Supervisor/Principal Decision, Form C..... **JA 621** (p. 5. C. ¶1).

**Step 4 – Superintendent's Hearing Officer**
If the grievance is not settled to the employee's satisfaction in Step 3, the employee can proceed to Step 4 by filing a written notice of appeal utilizing Step

4 – Appeal of Cluster/Department Assistant Superintendent Decision, Form E with the superintendent's hearing officer…. **JA 621** (p. 6. D. ¶1).

**Step 5 – Fact Finding Panel**
In the event the grievance is not settled upon completion of Step 4, either the employee, or the School Board, may elect to have a hearing by a fact-finding panel prior to a decision by the School Board….. **JA 621** (p. 6. E. ¶1).

**Expenses**
The employee shall bear his or her own expenses.  The school board shall bear the expenses of the Superintendent.  The expenses of the panel shall be borne one half by the school board and one half by the employee. **JA 621** (p. 8. 5. a.).

Ms. Lee argues that the School Board et al did not follow their own grievance procedure in that according to the grievance procedure Step 2 no. 2 the timelines for pursuing a grievance where held in abeyance due to the fact that the OEC had not completed their investigation into her discrimination complaint. **JA 621** (p. 5. Step 2-2 ¶1). Even if the School Board et al discounted this fact, according to the grievance procedure, Ms. Lee had fifteen business days to file a grievance against Ms. Chianetta's May 14, 2012 evaluation and the letter that she wrote to Ms. Pajardo also dated May 14, 2012, wherein she recommended Ms. Lee's termination due to incompetence. **JA 621** (p. 4. B. ¶1).  Nonetheless, prior to the end of the fifteen business days allotted for Ms. Lee to initiate a grievance and without the mandated "personal face-to-face meeting", **JA 621** (p. 3. V. ¶2), Ms. Pajardo wrote a letter to Mr. Dale dated May 23, 2012 wherein she recommended Ms. Lee's termination due to incompetence. **JA 621**.  Ms. Lee argues that the grievance steps 1-3 were decided against her without allowing for due process.

Although Ms. Lee's discrimination complaint was still under investigation therefore the timelines were in abeyance, **JA 621** (p. 5. Step 2-2 ¶1) and the 15 business days allotted to initiate a grievance had not expired, **JA 621** (p. 4. B. ¶1); without meeting with Ms. Lee "face-to-face" in order to discuss the matter, **JA 621** (p. 3. V. ¶2), Mr. Dale wrote a letter to Ms. Lee dated May 30, 2012, after receiving Ms. Pajardo's recommendation. Within his letter to Ms. Lee, he stated that he deemed her incompetent and recommended to the School Board that she be terminated from her position as a Special Education Teacher.  Mr. Dale also informed Ms. Lee that she had the right to request a hearing before the School Board or before a Fact Finding Panel, but, if Ms. Lee selected to have a hearing before the School Board, the School Board would exercise its right to elect a Fact-Finding Panel to conduct the hearing.  Furthermore he added that if Ms. Lee did not choose to have a Fact Finding Panel hearing, the School Board would make its final decision on the basis of his written recommendation.  **JA 164**.  The duress that Ms. Chianetta and Ms. Pajardo caused Ms. Lee increased as she realized that Mr. Dale's letter halted her use of step 4 of the grievance procedure.  **JA 621** (p. 6. D. ¶1).

Shortly after Mr. Dale notified Ms. Lee that she was mandated to use the Fact Finding Panel as the means of keeping her job, on or about June 8, 2012, Ms. Lee requested in writing to have the Fact Finding Panel hearing not knowing that there was a significant cost involved.  **JA 411**.

Ms. Lee was able to find an attorney who agreed to work with her limited finances. On or about June 18, 2012, her attorney informed the School Board et al that Ms. Lee retained his services. **JA 422**. In a letter dated June 21, 2012 the OEC informed Ms. Lee that her complaint was unfounded. **JA 619**.

After her attorney became acclimated with Ms. Lee's case, he informed her that she would have to pay half the cost of the Fact Finding Panel. Ms. Lee requested her attorney to ask the School Board et al to allow her to use steps 1-4 of the grievance procedure which had no cost. Ms. Lee's attorney responded that the School Board et al restated that she must use step 5 Fact Finding Panel which mandated the payment of half the cost. **JA 621** (p. 8. 5. a.) **JA 697** (p. 14).

Ms. Lee asked her attorney about the cost of the Fact Finding Panel. He responded that he did not know and then directed her to read and consider the article written in the Washington Post dated July 15, 2012. This article informed Ms. Lee that during the same time period that the School Board et al accused her of being incompetent, Fairfax County Public School ("Fairfax") was also alleging that Dr. Violet Nichols, another African American teacher, was incompetent and was seeking to have her terminated from her teacher position. The same article stated that Fairfax spent $78,000 in their effort to terminate Dr. Violet Nichols, by use of the Fact Finding Panel. The article also reported that after a multi-day hearing the Fact

19

Finding Panel declared that Dr. Nichols was an exemplary teacher who deserved to remain in her position. **JA 697** (pp. 10-11).

 After the fact, Ms. Lee read other articles written on the matter, one of which was written by Tom Allen and published in the October 2012 edition of the Virginia Journal of Education.  The article quoted Michael Hairston, who was the president of the Fairfax Education Association (FEA) at that time, as saying "FEA stood with her all the way. Had she not been a member it would have been very difficult and expensive for her to fight this. But we were able to get her a fantastic attorney and it cost her nothing out-of-pocket." **JA 697** (p. 11 ¶2).

Ms. Lee was not a member of any union therefore she was responsible for paying the costs she would have accrued if she grieved her dismissal by way of the Fact Finding Panel. No matter the amount, Ms. Lee concluded that she could not afford to pay half of the cost of the Fact Finding Panel therefore she asked her attorney to ask the School Board et al her alternative if she wasn't able to pay her half of the Fact Finding Panel.  The School Board et al restated to Ms. Lee's attorney that the School Board would base its decision on Mr. Dale's recommendation for her termination.  Ms. Lee experienced extreme undue stress as she came to the realization that the School Board would terminate her employment based on Mr. Dale's recommendation.  As she disclosed her inability to afford the payment of half

the cost of the Fact Finding Panel, her attorney informed Ms. Lee about a clause in the School Board's grievance procedure which reads as follows:

> Following a hearing by a fact-finding panel, the employee shall not have the right to a further hearing by the school board as provided in subsection F3 of this section. The school board shall have the right to require a further hearing in any grievance proceeding as provided in subsection F3 of this section. **JA 621** (p. 9. 6.).

Ms. Lee's attorney frankly revealed that even if she could acquire the funds needed to pay her half of the cost of the Fact Finding Panel, the School Board could still require further litigation if the Panel decided in her favor. Ms. Lee's attorney honestly informed her that the costs for litigating her proposed termination could double. Ms. Lee's attorney also revealed that if she continued to use his services to litigate the matter, her attorney's fees would accrue although she was on a payment plan. This information elevated Ms. Lee's duress; however, Ms. Lee's stress level increased when her attorney disclosed that she could lose her Virginia license to teach if her employment was terminated due to incompetence. **JA 8** (pp. 33-34 ¶¶ 195-196); **JA 697** (p. 12 ¶2). Ms. Lee argues that when the School Board et al offered to settle, she had no choice but to settle the matter.

Although Ms. Lee had an attorney, she declares that when she tried to participate in the development of the Settlement Agreement the School Board et al limited her participation. Ms. Lee asserts that the only request the School Board et

al relented to was to have her record exonerated and a neutral recommendation if she applied for a teaching position outside of Fairfax County.  **JA 697** (p. 12 ¶3).

The School Board et al then drafted a clause into the Agreement that required Ms. Lee to waive any and all claims against the School Board, its officers, agents, and employees, all and any claims under federal, state, local laws and regulations, arising from Ms. Lee's employment, including but not limited to claims based on age, race, sex, disability, religion, national origin, genetic information, or any other employment discrimination claim, all claims related to salary or wages, any and all claims based on contract, tort, or any claim whatsoever including, but not limited to, defamation, breach of contract, compensation, and infliction of emotional distress. **JA 634**. The School Board et al also wrote in the Agreement that Ms. Lee could never again work as a teacher in Fairfax County. **JA 634**.  Further, Ms. Lee had to accept a demotion to the position of Instructional Assistant (IA), with an approximate twenty-five thousand dollar ($25,000.00), salary decrease. She would also no longer be entitled to pay increases beyond cost of living.  **JA 634**.

Ms. Lee argues that the School Board et al's Agreement is an adhesion contract.

> An adhesion contract is a form contract created by the stronger of the contracting parties," usually drafted by the latter's lawyers, and "offered on a 'take this or nothing' basis."  (Rubin v. Blue Cross Hosp. Serv., Inc., 637 S.W.2d 695, 697 (Mo. 1982). The weaker party is not allowed to negotiate the terms of the contract; he "has no choice but to conform" or "adhere" to the form contract's terms, or else abandon the transaction.

> _Id_.     The terms of an adhesion contract "unexpectedly or unconscionably limit the obligations and liability of the drafting party." _Id_.

Therefore, Ms. Lee claims that the School Board et al's Agreement was written in bad faith and that she was indeed coerced into signing the Agreement.

> Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. (Hooters of America, Inc. v. Phillips 39 F. Supp.2d 582 (1998), 173 F. 3d 933, 940 (4th Cir. 1999) _quoting_ Virginia Vermiculite, Ltd. v. W.R. Grace & Co., 156 F.3d 535, 542 (4th Cir.1998)). "Thus, contractual discretion is presumptively bridled by the law of contracts-by the covenant of good faith implied in every contract.' " (_Id. quoting_ Steven J. Burton & Eric G. Andersen, Contractual Good Faith 46-47 (1995)). Bad faith includes the "evasion of the spirit of the bargain" and an "abuse of a power to specify terms." (_Id. quoting_ Restatement (Second) of Contracts § 205 cmt. d. (1981)).

Ms. Lee retired on April 30, 2014 from Fairfax County Public School System due to the emotional distress that she suffered on a daily basis from the embarrassment and humiliation of being forced to take the demotion to the position of an Instructional Assistant.  **JA 650**.

## <u>SUMMARY OF ARGUMENT</u>

This case involves a Settlement Agreement that Ms. Lee signed on August 29, 2012 after she was given notice that she would not be reappointed to the position of Special Education Teacher due to incompetence.  Ms. Lee argues that her Motion To Alter Or Amend Judgment clearly reveals that the grievance procedure's step 5 mandate to pay half the cost of the Fact Finding Panel is unconscionable thus under

Virginia law the Agreement must be rendered void by the Court. **JA 697** (p. 17 no. 3).  Ms. Lee also asserts that in both her Complaint and Motion To Alter Or Amend Judgment she argued that under Virginia law the Agreement must be rendered void because the School Board et al forced her to sign an unconscionable Agreement by using improper, unlawful acts that violate public policy including discrimination, retaliation, defamation, the denial of 14th Amendment right to due process, as well as economic duress.  **JA 8** (pp. 33-47); **JA 697** (pp. 13-17).

> To hold that it was competent for one party to put the other parties to the contract at the mercy of its own misconduct is never lawfully done where an enlightened system of jurisprudence prevails. Public policy forbids it, and contracts against public policy are void. (Hiett v. Lake Barcroft Community Association 418 SE 2d 894, 896 (Va. 1992)).

## **ARGUMENT**

## STANDARD OF REVIEW

All assigned errors on appeal are errors of law preserved by Ms. Lee's Motion To Alter Or Amend Judgment.  This Court's review therefore is *de novo*.  "We review the grant of summary judgment *de novo*". (Canal Ins. Co. v. Distrib. Servs., Inc., 320 F.3d 488, 491 (4th Cir. 2003)).

**ISSUE 1 & 2 –The District Court Erred in Granting the School Board et al's Rule 56 Motion for Summary Judgment as to Counts I and II and in Denying Ms. Lee's Motion to Alter / Amend the Judgment as manifest injustice did occur**

*Count I:  Economic Duress*

Virginia defines duress as the overbearing of a person's free will by an unlawful or wrongful act or by threat such that the party's consent to a contractual agreement is involuntary. (<u>Bond v. Crawford</u>, 69 S.E.2d 470 (Va.1952) *quoting* <u>Cary v. Harris</u>, 91 S.E. 166 (Va.1917)).

**Question That Only A Judge or Jury Can Answer After Trial:** Has the Plaintiff alleged particular facts, in existence on or about the day of signing, to support her claim that those circumstances overcame her volition and free will?

Federal Rule of Civil Procedure 9 requires that the Plaintiff plead duress, a species of fraud, with particularity (<u>Wanda King v. DonnKenny</u>, 84 F. Supp. 2d 736, 739 (W.D. Va. 2000) *quoting* <u>Mortarino v. Consultant Eng'g Servs.</u>, 251 Va. 289, 467 S.E.2d 778, 782 (1996)).

Furthermore, determining whether duress is present, insofar as threats may be expressed or implied, and that the threat must induce assent to a contract, depends greatly upon the subjective state of mind of the plaintiff. So this determination involves difficult questions of both law and fact. Thus, the court cannot grant the Defendant's motion respecting this issue at this time. (<u>Wanda King v. DonnKenny</u>, 84 F. Supp. 2d 736, 739 (W.D. Va. 2000).

## <u>Specific Facts Showing That There Is A Genuine Issue For Trial</u>

### Defendants' Wrongful and Unlawful Acts

**I.    Defamation per se (slander and libel are unlawful acts as well as a species of fraud)**

Fraud, defamation, and sharp practices are specific examples of "improper methods," as explained by the Virginia Supreme Court in (<u>Duggin v. Adams</u>, 234 Va. at 227-28, 360 S.E.2d at 836-37(1996)).

Statements which impute to a business or professional person conduct which tends to injure him/her in his/her business or profession are actionable as defamation per se, without proof of special damages. (<u>Carwile v. Richmond Newspapers, Inc.</u> 82 S.E. 2d at 592(1954)). Where an individual is engaged in a profession, such as medicine, the law, or teaching, "words charging professional incompetence are

actionable per se", (50 Am. Jur.2d, Defamation and Slander §§ 227, 229, and 231.)

In Ms. Lee's Complaint, Count IV states a claim of defamation *per se* which is actionable without special damages. In support of her claim Ms. Lee declared emphatically that she was an exceptional Special Education Teacher who either met or exceeded standards on all teacher evaluations from 1999 until 2011. Furthermore, Ms. Lee alleged that Ms. Chianetta defamed her character when she marked "Does Not Meet" in the area of required performance standards on her 2011 teacher evaluation. **JA 117**. Additionally, in Count IV of her Complaint, Ms. Lee proclaimed that Ms. Chianetta committed defamation *per se* when she marked "Does Not Meet" in the area of required performance standards and "Do Not Reappoint" on Ms. Lee's 2012 final teacher evaluation as well as when she wrote a letter to Ms. Pajardo recommending Ms. Lee's termination due to incompetence. **JA 8** (pp. 36-37 ¶214-226); **JA 158**; **JA 163**.

Ms. Lee argues in her Motion To Alter Or Amend Judgment that Ms. Pajardo committed defamation *per se* when she wrote a letter to Mr. Dale dated May 23, 2012 in which she recommended Ms. Lee for termination due to incompetence. **JA 697** (p. 8 ¶1); **JA 163**. Additionally, Ms. Lee declared in her Motion To Alter Or Amend Judgment that Mr. Dale committed defamation *per se* when he wrote a letter to Ms. Lee dated May 30, 2012 informing her that he was recommending her for

dismissal from her position as a Special Education Teacher because she was incompetent. **JA 697** (p. 8 ¶1); **JA 164**.

On or about January 15, 2014, Ms. Lee sent an e-mail to the School Board et al explaining that her present position as an Instructional Assistant was humiliating and belittling.  **JA 697** (p. 8 ¶1) In this e-mail, Ms. Lee also asked the School Board to void their Settlement Agreement and reinstate her as a Special Education Teacher.  In a letter dated January 28, 2014, Ms. Pajardo responded on behalf of the School Board et al by reiterating that the School Board et al declared Ms. Lee unfit to perform the duties of a Special Education Teacher. **JA 463; JA 649**. This document restarted the statute of limitation thus it allowed Ms. Lee to file her Complaint against the School Board et al for defamation *per se* because her Count IV was no longer time barred.

In Count IV of her Complaint, Ms. Lee also refutes the School Board et al's declaration of incompetence by submitting evidence that reveals that she was an exemplary Special Education Teacher who made a profound difference in the lives of the students she taught, their parents, co-workers and the school as a whole.  **JA 115**; **JA 133**; **JA 146**; **JA 155**; **JA 156**; **JA 165**.

Ms. Lee declares that she has suffered excessive emotional duress and extreme financial hardship as result of the School Board et al's misdeeds.  **JA 8**  (pp. 33-34 ¶¶ 195-196); **JA 728** (p. 6 ¶2).  Although proof of special damages and malice are

prevalent, proof of special damages and malice are not required when pleading this

form of defamation *per se*.

> Even if a private defamation plaintiff is precluded from recovering
> presumed damages, he or she may prove and recover for actual
> damages flowing from the defamatory statement without a showing of
> malice. (Hugger v. Rutherford Institute, 94 Fed. Appx., 167-168 (4th
> Cir. 2004), *quoting* Gertz v. Robert Welch, Inc. 418 U.S. 323 at 349-50
> (1974)).

   If it is determined that the School Board et al committed the wrongful and

unlawful act of defamation *per se* in order to terminate Ms. Lee from her position of

Special Education Teacher, and/or to coerce her into signing the Settlement

Agreement, the Agreement must be rendered null and void.

> It is true that the issue of material fact required by Rule 56(c) to be
> present to entitle a party to proceed to trial is not required to be resolved
> conclusively in favor of the party asserting its existence; rather, all that
> is required is that sufficient evidence supporting the claimed factual
> dispute be shown to require a jury or judge to resolve the parties'
> differing versions of the truth at trial. (Anderson, 477 U.S. 242, 106
> S.Ct. 2505 91 L.Ed.2d 202 (1986) *quoting* 391 U.S., at 288-289, 88
> S.Ct., at 1592.)

> In determining whether there exists a genuine issue of material fact
> sufficient to preclude summary judgment, the court must regard the
> non-movant's statements as true and accept all evidence and make all
> inferences in the non-movant's favor. (*Id.* at 255).

## II. Economic Duress (is an unlawful act as well as a species of fraud)

Examples of improper methods include violence, intimidation, bribery,
unfounded litigation, fraud, misrepresentation or deceit, defamation,
duress, undue influence, misuse of inside or confidential information,
or breach of a fiduciary relationship. (Duggin v. Adams 234 Va. at 227-
28, 360 S.E.2d at 836 (1996)).

Generally, duress is the application of undue pressure in a contractual bargaining process through the use of improper threats or physical force. Restatement (Second) of Contracts §§ 174-77 intro. note at 473 (1981); cf. <u>Bob McClemore and Co., Inc. v. Branch Banking & Trust (In re Maco Homes, Inc.)</u>, Nos. 95-2938, 95-2939, 1996 WL 511494, at *4 (4th Cir. Sept.10, 1996).

Ms. Lee reemphasizes that she requested through her attorney to use steps 1-4 of the grievance procedure; however, the School Board et al through her attorney mandated her to use step 5 Fact Finding Panel which she deemed unaffordable. **JA 621** (p. 6. E. ¶1); **JA 8** (pp. 30-31 ¶¶172-173); **JA 697** (p. 14).

<u>(Boddie v. Connecticut,</u> 401 U. S. 371, 401 U. S. 379 (1971)). While many controversies have raged about . . . the Due Process Clause,' . . . it is fundamental that, except in emergency situations (and this is not one), due process requires that, when a State seeks to terminate a protected interest . . . , it must afford 'notice and opportunity for hearing appropriate to the nature of the case' before the termination becomes effective."

Ms. Lee maintains that she experienced intense emotional duress when the School Board et al committed defamation *per se* by deeming her incompetent and requesting her termination through the use of slander and libel. Additionally, Ms. Lee proclaims that the School Board et al violated her due process rights when they declared her incompetent without adhering to their grievance procedure steps 1-4. Ms. Lee argues that her distress level heightened when the School Board et al denied her request to use steps 1-4 of their grievance process after she retained an attorney. **JA 697** (p. 12 ¶2). Ms. Lee contends that her duress peaked when the School Board et al stated that if she did not choose to have the Fact Finding Panel hearing, the

School Board would base its final decision on Mr. Dale's recommendation. **JA 164**.

Furthermore, Ms. Lee declares that anxiety and severe emotional duress escalated

when she was made aware of the fact that if the Fact Finding Panel decided in her

favor the School Board could re-litigate the case thus doubling the cost of litigation.

Finally, Ms. Lee asserts that she suffered extreme emotional duress when her

attorney revealed that if she was dismissed from employment due to incompetence,

her Virginia license to teach could be revoked which would mean that she could no

longer work in her profession as a teacher. Ms. Lee knew that if this occurred the

result would be financial ruin thus she relented to agreeing to sign the

unconscionable Settlement Agreement due to economic duress. **JA 8**. (pp. 33-34 ¶¶

195-196); **JA 697** (p. 12 ¶2).

Ms. Lee argues that the School Board et al acted against public policy when

they violated her 14th Amendment right to due process by refusing to allow her to

use steps 1-4 of the grievance process and mandated her to use their Procedure

Regulation 4461.1 Step 5 which within itself is unconscionable because it required

her to pay half the cost of the Fact-Finding Panel. **JA 621** (p. 6. E. ¶1).

> The requirement of fee paying causes an "invidious" discrimination that
> runs afoul of the Equal Protection Clause. (<u>Harper v. Virginia Bd. of
> Elections</u>, 383 U.S. 663, 669 (1966)).
>
> (<u>Shankle v. B-G Maint. Mgmt.</u>, 163 F.3d 1230, 1234-35 (10th Cir.
> 1999)) (declaring unenforceable defendant's arbitration agreement
> because it required employee to pay half of the arbitrator's fee and thus
> "failed to provide an accessible alternative forum, . . . a result which

clearly undermines the remedial and deterrent functions of the federal anti-discrimination laws").

Ms. Lee contends that Mr. Dale and Ms. Pajardo were well aware of Ms. Chianetta's flaws as a principal and Ms. Lee's exceptional record and abilities to more than adequately perform her duties as a Special Education Teacher, nonetheless, with total disregard for the truth, when Ms. Lee tried to participate in the development of the Agreement, the School Board et al limited her participation by denying her primary requests which were to maintain her teacher status and to transfer to another school. The only request that the School Board et al relented to was Ms. Lee's request to have her record exonerated and a neutral recommendation if she applied for a teaching position outside of Fairfax County.

Ms. Lee was faced with two choices:

1.  Accept the School Board et al's unconscionable Agreement which would allow her employment with some income and benefits as well as the ability to keep her Virginia license to teach.

2.  Not accept the Agreement consequently allowing Mr. Dale to request the School Board to terminate her employment due to incompetence which would result in her losing her Virginia license to teach thus ending her career as a Special Education Teacher.

Faced with these improper threats, Ms. Lee had no other recourse but to submit to signing the unconscionable Agreement due to economic duress.

The Plaintiff avers two possible threats, both of which must be inferred from the circumstances. The first possibility is economic duress; conditioning the Plaintiff's receiving a job recommendation, severance pay and back wages solely upon her signing the release. The second

implies that a physical threat may have induced her signing; arising from a totality of the circumstances surrounding the Plaintiff's knowledge of the Defendant's criminal activity. Either instance could render the release voidable. <u>Wanda King v. DonnKenny</u>, 84 F. Supp. 2d 736, 738  (W.D. Va. 2000).

Ms. Lee proclaims that she provided genuine issues that would render the Agreement void.  She asserts that her Complaint specifically outlines and supports her allegation of the School Board et al's use of defamation *per se* and economic duress to coerce her into signing the unconscionable Settlement Agreement.  Ms. Lee argues that the Agreement should have been rendered voidable thus the Court should have denied the School Board et al's Motion For Summary Judgment.

### *Count II: Unconscionability*

Courts must apply a two-step test determining whether an agreement is unconscionable: 1) a gross disparity in the division of assets must have existed, and 2) overreaching or oppressive influences must have been present. <u>Galloway v. Galloway</u>, 47 Va. App. 83 (2005).

**Questions That Only A Judge or Jury Can Answer After Trial:** (1) Does the Settlement Agreement have a gross disparity in the division of assets between Ms. Lee and the Defendants? (2) Were there overreaching and oppressive influences in existence on or about the day of signing the Agreement?

**The Agreement has a gross disparity in the division of assets as follows:**

**Ms. Lee**

1. Ms. Lee was mandated to accept being terminated from the position of Special Education Teacher for Fairfax County Public Schools after teaching in this county for thirteen years.

2. Ms. Lee was forced to endure the extreme humiliation of being demoted to the Instructional Assistant position.

3. Ms. Lee had to accept more than twenty-five thousand dollars ($25,000.00) a year pay cut in salary. She had minimum fifteen more years before she could retire with full benefits therefore, Ms. Lee was forced to voluntarily relinquish more than three hundred seventy-five thousand dollars, ($375,000.00) in retirement pay.

4. Ms. Lee was mandated to withdraw her discrimination complaint.

**School Board et al**

1.  School Board et al was able to maintain the employment of an over thirteen year experienced Special Education Teacher with a Master of Science degree in Education by placing her in a subordinate position where the use of her experience, abilities and education would be an asset for the school system as a whole.

2. By mandating Ms. Lee to step down into the IA position, calculating in salary increases, the School Board et al was able to save more than twenty-five thousand dollars, $25,000.00 a year and would save more than three hundred seventy-five thousand dollars, $375,000.00 in the fifteen years that Ms. Lee had before she could retire with full benefits. Additionally, the School Board et al would save hundreds of thousands of dollars upon Ms. Lee's retirement by paying her monthly at the Instructional Assistant salary instead of at the full teacher salary.

3. School Board et al settled a discrimination grievance without expending the thousands of dollars it would have cost to adjudicate Ms. Lee's discrimination claim.

4. School Board et al had just conceded to trying to dismiss Dr. Violet Nichols, an exceptional African American teacher, unjustly thus Defendants would avoid the humiliation that would occur if Ms. Lee's discrimination grievance became public knowledge.

**Overreaching and oppressive influences were in place as follows:**

1. Ms. Lee requested through her attorney to be able to use steps 1-4 of the grievance procedure at no cost; however, in response to Ms.

33

Lee's request, the School Board et al stated that she could only use step 5 Fact-Finding Panel where in which she was required to pay half the cost of the Fact-Finding Panel, which she could not afford.

2. The School Board et al's Procedure Regulation 4461.1 step 5 is unconscionable because it mandated Ms. Lee to pay half the cost of the Fact Finding Panel which violated her 14th Amendment right to due process.

3. Knowing that she could not afford the School Board et al's mandated Fact Finding Panel hearing and that the only other choice was to allow Mr. Dale's defamatory recommendation for her termination to be made to the School Board caused Ms. Lee extreme stress and anxiety. Additionally, Ms. Lee's knowledge of the possibility that her Virginia state license to teach could be revoked caused her further excessive undue emotional duress.

Therefore, Ms. Lee insists that she had no other recourse but to sign the unconscionable Agreement due to the overreaching and oppressive influences inflicted upon her by the School Board et al. Ms. Lee proclaims that she set forth specific facts showing that there were genuine issues which could convince a jury to render the Agreement void due to unconscionability, therefore the District Court should have denied the School Board et al's Motion for Summary Judgment.

In the alternative, Ms. Lee asserts that the Court should have granted her Motion to Alter Or Amend Judgment in that therein she presented substantial argument which was sufficient enough to reverse the Honorable Judge's October 31, 2014 ruling. **JA 697**. The denial of Ms. Lee's Motion caused manifest injustice due to the fact that she produced genuine issue of facts that could render the Settlement Agreement void by a jury of her peers and a void contract is null.

A void contract is a complete nullity, one that has no legal force or binding effect." <u>Colbert v. Ashland Construction Co.</u>, 11 S.E.2d 612, 616 Va. (1940) (stating that "when the law prohibits a thing, it is unlawful to do it, and the courts should not lend their aid to the enforcement of prohibited contracts").

Accordingly, when the Agreement is rendered void as to economic duress and/or unconscionability, Ms. Lee's Complaint, (Counts III-X), may proceed.

## **CONCLUSION**

It is a fundamental principle that one has the right to protect his or her property from its' unlawful taking by another. Consistent with the United States Constitution, the Virginia Constitution states:

> [A]ll men are by nature equally free and independent and have certain inherent rights, of which, when they enter into a state of society, they cannot, by any compact, deprive or divest their posterity; namely, the enjoyment of life and liberty, with the means of acquiring and possessing property, and pursuing and obtaining happiness and safety.

VA CONST., Article I, §1. It further states that "no person shall be deprived of his life, liberty, or property without due process of law." VA CONST. Article I, §11. As expressly stated by the Virginia Supreme Court:

> ... in our view, the issue is controlled by principles of due process of law. 'It is fundamental, of course, that no person may be deprived of his property without due process of law. <u>Finkel Products v. Bell</u>, 205 Va. 927, 931, 140 S.E.2d 695, 698 (1965))(footnote 3 omitted).

<u>Walt Robbins, Inc. v. Damon Corp.</u>, 232 Va. 43, 47, 348 S.E.2d 223, 226 (Va., 1986). Ms. Lee's position with Fairfax County Public Schools is a property right.

> After the expiration of a probationary period, teachers ... should have permanent or continuous tenure and their service should be terminated only for adequate cause, except in the case of retirement for age, or under extraordinary circumstances because of financial exigencies. (*See* "Academic Freedom and Tenure: 1940 Statements of Principles and Interpretive Comments", 60 AAUP BULL. 269 (1974).

> "Cause" means legal cause, and not merely any cause deemed sufficient. (*See* <u>Richardson v. Board of Regents</u>, 70 Nev. 144, 261 P.2d 515 (1953)).

The School Board et al deemed Ms. Lee incompetent in her position as a Special Education Teacher therefore she also has a liberty right to due process.

> For "where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." (*See* <u>Wisconsin v. Constantineau</u>, 400 U.S. 433, 437 (1971)).

Ms. Lee's Complaint and Motion To Alter Or Amend Judgment sufficiently pled facts to establish that the Settlement Agreement could be rendered void by a jury of her peers therefore the School Board et al's Motion For Summary Judgment should have been denied; in the alternative, Ms. Lee's Motion To Alter Or Amend Judgment should have been granted to avoid a manifest injustice.

**WHEREFORE** Appellant Cynthia Lee prays that this Court will vacate the Orders which granted the School Board et al's Motion For Summary Judgment and denied her Motion To Alter Or Amend Judgment.  Ms. Lee also requests that this

Court will reverse the Honorable District Court's decisions and remand for further

consideration of Ms. Lee's claims in accordance with the opinion.

Respectfully Submitted,

CYNTHIA LEE

By Counsel,

THE BROWN FIRM PLLC

By: ___/s/_____
        Christopher E. Brown, Esq.
        VSB#39852
        526 King St., Suite 207
        Alexandria, VA 22314
        703-924-0223
        Fax 703-997-2362
        brownfirm@lawyer.com

**Ms. Lee requests that this matter be decided based on briefs and the record.**

**CERTIFICATE OF COMPLIANCE**

1.    This brief complies with the type-volume limitation of Fed. R. App. P.28.1 (e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains 8,154 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using *Microsoft Word* in *14pt Times New Roman*; *or*

[ ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: May 11, 2015        _____/s/_____
                          *Christopher E. Brown VSB#39852*
                          *Counsel for Appellant*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 11th day of May, 2015, I filed the foregoing brief and associated Joint Appendix with the Court's ECF system, which will send notice and a copy to the below counsel for the Appellees:

ROBERT M. FALCONI, ESQ.
MARY MCGOWAN, ESQ.
Blankenship & Keith, PC
4020 University Drive, Suite 300
Fairfax, Virginia 22030

_____/s/ Christopher E. Brown_____
CHRISTOPHER E. BROWN
*Attorney for Plaintiff-Appellant*